UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAURA KAHLE,<br><br>                Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>                Defendant. | Case No. C17-5438 JCC<br><br>**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

Laura Kahle seeks review of the denial of her application for disability insurance benefits. Ms. Kahle contends the ALJ erred in evaluating the opinions of her treating physicians and her own testimony. Dkt. 12 at 1. The Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

I.     BACKGROUND

Ms. Kahle is currently 51 years old, has a high school education, and has worked as a substance abuse counselor, triage scheduler, and companion. Tr. 44. On September 19, 2014, Ms. Kahle applied for disability benefits, alleging disability as of February 10, 2012. Tr. 26. Her application was denied initially and on reconsideration. Tr. 26. After the ALJ conducted a hearing on December 8, 2015, the ALJ issued a decision finding Ms. Kahle not disabled. Tr. 26-

45.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Kahle has not worked since the alleged onset date.

**Step two:** She has the following severe impairments: degenerative disc disease; right foot drop; reflux disease, status post bariatric surgery; polyarthralgia; bilateral knee arthritis vs. patellofemoral syndrome; obesity; affective disorder; and anxiety disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Ms. Kahle can perform light work, can carry 20 pounds occasionally and 10 pounds frequently, can sit 6 hours and stand/walk 6 hours, can never climb ladders, ropes or scaffolds, can frequently balance, stoop, kneel, crouch and crawl, should avoid concentrated exposure to hazards, can carry out complex tasks, can have superficial contact with coworkers and the public, and can accept supervisor instructions.

**Step four:** She cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that she can perform, Ms. Kahle is not disabled.

Tr. 28-31. The Appeals Council denied Ms. Kahle's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

## III. DISCUSSION

Ms. Kahle contends the ALJ erred in rejecting her testimony and the opinions of two treating physicians, pain management specialist Susan J. Shlifer, M.D., and rheumatologist Parul Sharma, D.O., and in relying instead on the opinion of nonexamining physician Norman Staley,

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

M.D. Ms. Kahle contends the errors are harmful because both treating physicians opined that she could not sustain an 8-hour work day and would miss at least four days per month due to her impairments or treatment, and a vocational expert testified that a person who missed work even two times per month could not sustain employment.

In determining whether the Commissioner's findings are supported by substantial evidence, the Court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Court may not affirm simply by isolating a specific quantum of supporting evidence. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If, however, the evidence reasonably supports both affirming and reversing the denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720–21; *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

### A. Ms. Kahle's Testimony

At the hearing, Ms. Kahle testified that she could not walk three blocks without stopping to rest, she did not drive longer than ten minutes due to back pain as well as safety concerns because of her right foot drop, sitting was uncomfortable, and she could not stand comfortably for more than a few minutes. Tr. 69-77.

The ALJ discounted Ms. Kahle's testimony as inconsistent with medical evidence and her work history and activities, and because of evidence indicating drug-seeking activity. Tr. 33.

The ALJ found that Ms. Kahle had established underlying impairments that could reasonably be expected to cause her symptoms and did not find evidence of malingering. Tr. 33.

Under such circumstances, the ALJ may reject Ms. Kahle's testimony about the severity of her symptoms only with "specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's reasons must be supported by substantial evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (reviewing court's "task is to determine whether the ALJ's adverse credibility finding of [a claimant's] testimony is supported by substantial evidence under the clear-and-convincing standard"). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Although the ALJ included erroneous reasons regarding daily activities and work history, the Court concludes that the largely normal clinical findings, stopping work for reasons other than her impairments, and drug-seeking activity, when taken together provide a clear and convincing reason, supported by substantial evidence, to discount Ms. Kahle's testimony.

          1. <u>Medical Evidence</u>

There is no dispute that Ms. Kahle suffers from severe degenerative disc disease, confirmed by imaging, gastrointestinal disorders related to a congenital abnormality, and knee arthritis. Tr. 28-29, 800-801. Nor does the Commissioner dispute that she requires opioid medication to deal with the resulting pain. Tr. 33; Dkt. 13. What is disputed is the resulting level of functional limitations.

Substantial evidence supports the ALJ's findings that Ms. Kahle typically reported low to moderate levels of pain and that there was a paucity of abnormal medical findings in measurements of functional ability. Tr. 33-36. In a series of visits to Narinder Duggal, M.D.,

from February 2012 to May 2013, Ms. Kahle's typical pain levels were around three or four out of ten with 70-80% pain relief, and her physical exam results were largely normal. Tr. 372, 379, 387-88, 394, 414, 422, 432, 441, 450, 458, 466, 477, 489, 500, 511, 523, 535, 546, 557; *but see* Tr. 404 (20-30% pain relief), 460, 469, 481, 493, 503 (neck range of motion restricted). Ms. Kahle began seeing Dr. Shifler in May 2013. Through the latest examination, in November 2015, pain levels continued to be typically "mild" to "moderate" with "adequate pain control" and physical exam results were largely normal other than the right foot drop. *See*, *e.g.*, Tr. 1658-62, 1692-95, 1697-1700, 1737-39, 1852-53, 1855, 1862-64, 1866-68, 1869-71, 1873-75, 1869-71, 1879-80, 1886; *but see* Tr. 1665-67 (pain 7/10), 1860 (antalgic gait, "some swelling and stiffness of joints in fingers"), 1857 (antalgic gait).

Ms. Kahle argues that her relatively benign medical reports are only because she was under treatment and relatively sedentary, and do not reflect her ability to work. Dkt. 12 at 7-9. However, the ALJ used the benign treatment notes to evaluate Ms. Kahle's testimony, not to demonstrate her ability to work. An ALJ may consider "inconsistencies in testimony or between testimony and conduct" as a factor in weighing credibility. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). Ms. Kahle's assertions that disabling pain prevents her from sitting or standing for more than a few minutes are inconsistent with the treatment notes that her pain was typically well-controlled. The inconsistency provides a legitimate reason for the ALJ to discount Ms. Kahle's testimony regarding her symptoms.

The lack of objective medical evidence corroborating the level of pain is also "a factor that the ALJ can consider in [her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). The ALJ reasonably considered the lack of abnormal clinical findings.

Ms. Kahle contends that the ALJ's findings were not consistent with the record as a whole, because the ALJ selectively cited benign medical evidence. Dkt. 12 at 8. An ALJ may not cherry-pick from the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Likewise a reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). But here, the reported pain levels and medical findings the ALJ cited are consistent with the overall record. It is the higher pain levels that are the exception in the records.

The Court concludes that substantial evidence supports the ALJ's determination that inconsistencies with the medical evidence undermined Ms. Kahle's testimony.

2. <u>Work History</u>

Ms. Kahle stopped working in February 2012. Tr. 38. The ALJ concluded that Ms. Kahle worked while she had the impairments she now argues are disabling, and that she stopped working to care for her mother rather than because of her impairments.

Several of Ms. Kahle's conditions existed in some form before she quit working in 2012. Ms. Kahle was born without an esophageal sphincter and underwent related surgery in 1999 and 2006. Tr. 38. In August 2008, Ms. Kahle was diagnosed with foot drop. Tr. 1614-17. In her 2013 initial visit with Dr. Shlifer, Ms. Kahle reported chronic back pain since 2008. Tr. 1884. Imaging shows that the disc degeneration worsened over time. In September 2009, a MRI of Ms. Kahle's spine showed changes such as "disc desiccation" at T11-T12 and "[m]ild to

moderate degenerative disc disease of the lumbar spine…." Tr. 798-99. However, it was not until a December 2013 MRI that "[s]evere degenerative disc disease at T11-T12" was diagnosed. Tr. 801. Accordingly, substantial evidence does not support the ALJ's finding that Ms. Kahle worked for years with all of the impairments she now alleges are disabling.[4]

Substantial evidence does, however, support the ALJ's finding that Ms. Kahle quit working for reasons other than her impairments. Based on treatment notes from Dr. Shlifer and from psychiatric counselor Rachel Burgett, A.R.N.P., the ALJ concluded that Ms. Kahle stopped working in order to care for her mother. Tr. 38. Ms. Burgett's notes from April 2015 state that Ms. Kahle "quit working in 2012 to take care of her terminally ill mother…." Tr. 1649. Dr. Shlifer noted in September 2015 that Ms. Kahle worked until she had "retching, pain, anxiety and fatigue that made it impossible to keep up with demands at work and care for her ailing mother now interfering with her ability to care for herself…." Tr. 1668. Ms. Kahle testified at the hearing that she stopped working because she "was harassed horrendously at work[, her] attendance was horrible [and she] was getting too sick and too depressed because of [her] mom's condition…." Tr. 61. All three sources indicate that Ms. Kahle's employment ended at least in part because of her mother's condition.

The ALJ is responsible for determining credibility and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Here, substantial evidence supports the ALJ's conclusion that Ms. Kahle stopped working primarily to care for her ailing mother. Stopping work for reasons other than her impairments is a valid factor to consider in evaluating Ms. Kahle's pain testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

---

[4] The ALJ also found Ms. Kahle's knee arthritis was a severe impairment that began mid-2015. Tr. 28-29.

### 3. Daily Activities

The ALJ found that Ms. Kahle's work as a care-provider undermined her claims that she was disabled because she could shop, cook, and clean house for her mother. Tr. 39.[5] This finding is not supported by substantial evidence. Although Ms. Kahle attempted to care for her mother, she performed very limited physical tasks. Furthermore, even these limited efforts compromised her own health and were ultimately unsustainable.

The ALJ cites treatment notes showing that Ms. Kahle told Dr. Shlifer she was "providing the bulk of her mother's care" and that the mother was "completely dependent on her daughter for shopping, cooking and housekeeping." Tr. 1808, 1869. There is little evidence on how much shopping, cooking, and housekeeping Ms. Kahle actually did. Ms. Kahle testified that she could not "lug groceries up the stairs" and that she paid other people for "[a]nything physical."[6] Tr. 65. Ms. Kahle testified that she paid bills, "navigated" the workers' compensation system, cleaned the cat box, fed her mother and gave her medicines, but could not provide "physical care" for her mother. Tr. 66. Ms. Kahle told Dr. Shlifer that she would spend three or four days with her mother and then three or four days at home recovering. Tr. 1811. Thus her mother apparently survived for some period, as much as three years, regularly having no care at all for multiple days in a row.

In April 2014, Dr. Shlifer's assessment was that Ms. Kahle was "allowing her own health to deteriorate as she tries to care for her mother…." Tr. 1811. Ms. Kahle agreed she was "seeing her own health deteriorate" from trying to take care of her mother. Tr. 1808. She

---

[5] The ALJ's remaining citations are unhelpful as they either address Ms. Kahle's mental abilities, which are not at issue in this case, or show that Ms. Kahle "took care of [her mother] for three years" without specifying what tasks she performed. Tr. 1020, 1028, 66.

[6] Ms. Kahle testified that her mother could bathe herself. Tr. 65.

needed "3-4 days of bed rest to recover enough to go back to spend 3-4 days with her mother." Tr. 1808. Ms. Kahle's mother eventually went into "24-hour respite care" in June 2014, "in-patient hospice care" in July, and died in August. Tr. 1773, 1764, 1757.

In sum, there is no evidence that Ms. Kahle shopped, cooked, or cleaned to a degree inconsistent with her alleged impairments. A person need not be completely incapacitated to be eligible for disability benefits. *Smolen*, 80 F.3d at 1284 n. 7. Furthermore, Ms. Kahle's inability to provide care for her mother on a daily, ongoing basis, and the deterioration in her own health even with the less-frequent care she did attempt to provide, do not undermine her claims of disabling impairments.

The Court concludes that the ALJ erred in finding that Ms. Kahle's daily activities conflicted with her testimony.

### 4. Drug-seeking Behavior

Drug-seeking behavior can be a clear and convincing reason to reject a claimant's subjective pain testimony or a physician's diagnosis. *See Edlund v. Massanari*, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (ALJ permissibly rejected treating physician's opinion because he was likely unaware claimant "was exaggerating his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction"). If the evidence regarding drug seeking behavior is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld if "supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see Paez v. Berryhill*, Case No. CV 16-9148-RAO, 2018 WL 583099 at *9 (C.D. Cal. Jan. 26, 2018) ("Although some records suggest an objective medical basis for Plaintiff's pursuit of pain relief, the evidence can rationally support the ALJ's finding of drug-seeking behavior. Accordingly, the Court must uphold her interpretation of the

evidence.").

The possibility of drug seeking behavior is not enough; an ALJ must "point to specific facts which demonstrate that [the claimant] is in less pain than she seems." *Potter v. Colvin*, No. CV 14-2562, 2015 WL 1966715 at *22 (N.D. Cal., Apr. 29, 2015) (alteration in original) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591-92 (9th Cir. 2009)). In *Potter*, "the ALJ merely wrote a single line that Plaintiff exhibited drug-seeking behavior." *Id.* "Because the ALJ failed to use specific facts to support her conclusion that Plaintiff is not credible due to her drug-seeking behavior, or adequately analyze conflicting evidence, this does not constitute a clear and convincing reason to discount her testimony." *Id.*

Here, there is substantial evidence to support the ALJ's conclusion. The ALJ cited two hospitalizations, in April 2014 and September 2015, during which doctors believed Ms. Kahle was engaging in "drug seeking behavior." Tr. 36, 39, 764, 1296-97. The ALJ also cited five instances between October 2012 and May 2014 when Ms. Kahle asked for replacement medications because hers were allegedly lost or flushed down the toilet by her mother. Tr. 316, 1873, 1869, 1808, 1781.

The facts of the instant case more closely resemble the facts in *Paez* than in *Potter*. In *Paez*, although documented medical conditions such as kidney stones and migraines were a legitimate basis for the plaintiff's pursuit of pain relief, several treatment notes raising the possibility of drug-seeking behavior and rejecting the plaintiff's requests for opioids constituted substantial evidence of drug-seeking behavior. *Paez*, 2018 WL 583099 at *9. Here, some medical records indicate an objective basis for Ms. Kahle's pursuit of pain relief and evidence that Ms. Kahle sought to reduce, rather than increase, her opioid use. Tr. 84 (reduced oxycodone use); Tr. 1884, 1761, 1662, 1755, 1669 (goals include to "reduce reliance on opioids"); Tr. 1664

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

(stopping fentanyl patch). Ms. Kahle's pain management specialist screened her for substance abuse, and disagreed that her behavior was drug-seeking. Tr. 1659; Tr. 80; *see also* Tr. 1873, 1869, 1862, 1758, 1662, 1659, 1660-61 (prescription monitoring system and urine test results consistent with prescribed use). Ms. Kahle's treating physicians at times resisted her efforts to reduce her opioid use. Tr. 1781-82 (Gastroenterologist "particularly does NOT want her oxycodone … or hydromorphone … reduced while he is evaluating her condition [of severe esophageal pain and spasm] nor until her condition has significantly improved.").

But because the evidence, including drug-seeking behavior in two hospitalizations and claiming loss of medications five times, reasonably supports affirming the ALJ's conclusion that Ms. Kahle engaged in drug-seeking behavior, the Court may not substitute its judgment for that of the Commissioner. *See Reddick*, 157 F.3d at 720–21; *Thomas v*, 278 F.3d at 954. The Court concludes that substantial evidence supports the ALJ's determination that drug-seeking behavior undermines the credibility of Ms. Kahle's testimony.

### 5. Harmless Error

The ALJ provided several reasons supported by substantial evidence for discounting Ms. Kahle's testimony: largely normal functional clinical results, stopping work for reasons unrelated to her impairments and drug-seeking behavior. Taken together, these are "specific, clear and convincing reasons" to reject Ms. Kahle's testimony. *Garrison*, 759 F.3d at 1014-15; *Carmickle*, 533 F.3d at 1162-63 (where an ALJ provides at least one valid reason supported by substantial evidence to discount a claimant's credibility, inclusion of other erroneous reasons is harmless). Although the ALJ also provided reasons unsupported by substantial evidence, the error is harmless.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 11

## B. Treating Physician Opinions

Generally, the opinion of a treating physician is entitled to greater weight than that of a non-treating examining physician, and an examining physician's opinion is entitled to greater weight than that of a nonexamining physician. *Garrison*, 759 F.3d at 1012. Even if a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "'specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ must analyze the conflicting medical evidence and explain why her own interpretations, rather than the doctors', are correct. *Id.* Boilerplate criticism is insufficient. *Id.* at 1012-13.

Contradiction between a treating physician's opinion and her treatment notes constitutes a specific and legitimate reason for rejecting that opinion. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). An ALJ may also discount a doctor's opinion that is inconsistent with the medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 1. Susan Shlifer, M.D.

Dr. Shlifer is Ms. Kahle's treating physician and a chronic pain management specialist. Ms. Kahle contends the ALJ erred in discounting Dr. Shlifer's opinion that limitations due to Ms. Kahle's impairments included less than four hours sitting and one hour each standing and walking, and at least four hours resting, per day, and that Ms. Kahle was likely to be absent from work due to impairments or treatment more than four times per month. Tr. 1134-36.

The ALJ discounted Dr. Shlifer's opinion on the grounds that (1) objective findings did not support the "profound restrictions" Dr. Shlifer placed, (2) Dr. Shlifer had "limited knowledge of the overall medical record," and (3) the ALJ did "not find Dr. Shlifer's testimony regarding

drug seeking activity convincing." Tr. 42-43.  The Court concludes that inconsistencies with objective medical evidence constitute a specific, legitimate reason supported by substantial evidence to discount Dr. Shlifer's testimony, and inclusion of other, erroneous reasons was harmless.

### a. Clinical Evidence

As discussed above, with few exceptions Dr. Shlifer's and Dr. Duggal's physical examinations generally revealed few abnormalities other than the right foot drop.  Functional measurements showed a full range of motion in all extremities, and the ability to walk on heels and toes and rise from a squat.  Tr. 1887.

Dr. Shlifer's treatment notes indicate she reviewed imaging and physiological test results from other physicians.  A SPECT bone scan and MRI scans found severe degenerative disc disease, mild sacroiliitis, and "progression of RIGHT paracentral disc protrusion at L3-4" in Ms. Kahle's back.  Tr. 1661.  Knee nerve conduction study and electromyography test results were abnormal, with compression of the right peroneal nerve.  Tr. 1661.

These laboratory results do not by themselves establish extreme *functional* limitations.  The functional examinations generally showed normal results.  At her initial visit, Dr. Shlifer noted a "full range of motion in all extremities" and, in strength testing, Ms. Kahle was "able to walk on heels and toes and rise from squat…." Tr. 1887.[7]  These functional measures were not recorded in all subsequent office visit notes but, where recorded, results were generally normal.  *See* Tr. 1871, 1868, 1857, 1847, 1843, 1770, 1766, 1760 ("full range of motion in all

---

[7] Bilateral tight paraspinal muscles and a "slight limp" due to right foot drop were the only musculoskeletal abnormalities noted.  Tr. 1887.  Obesity and a weak patellar reflex were the only other abnormalities observed.  Tr. 1886-87.

extremities"); 1835, 1830 ("walks on heels and toes"); *but see* Tr. 1754 (slight weakness in bilateral lower extremities). These normal functional abilities conflict with the extreme nature of the functional restrictions in Dr. Shlifer's opinion.

The Court concludes substantial evidence supports the ALJ's conclusion that Dr. Shlifer's opinion was not supported by her treatment records.

### b. *Knowledge of Overall Record*

The ALJ faulted Dr. Shlifer for not directly consulting Ms. Kahle's rheumatologist, Dr. Sharma, regarding Ms. Kahle's purported rheumatoid arthritis. Tr. 42. Dr. Sharma's testing ruled out rheumatoid arthritis in January 2015. Tr. 1048.[8] But Dr. Shlifer's May 2015 opinion contains "rheumatoid arthritis" in the list of diagnoses to support her opinion. Tr. 1136-37. Substantial evidence supports the ALJ's conclusion that Dr. Shlifer's knowledge of the overall record undermines her opinion.

The ALJ also faulted Dr. Shlifer for testifying that Ms. Kahle needs surgery in addition to lap band re-pressurization for esophagitis while Dr. Schneier only recommended lap band re-pressurization. Tr. 42, citing Tr. 1118-25. The ALJ's conclusion is not supported by the record. The reference to "surgery" in her hearing testimony is related to the lap band and, given that the lap band is inside Ms. Kahle's body, refilling it is reasonably referred to as "surgery." Tr. 81. There is no indication that Dr. Shlifer is referring to some unspecified additional surgery. Inclusion of this invalid reason is, however, harmless.

---

[8] Dr. Shlifer's list of diagnoses dropped rheumatoid arthritis in February 2015. Cf. Tr. 1735, 1730. The opioid medication prescribed, however, did not change. Cf. Tr. 1736, 1731. As late as November 2015, Dr. Shlifer's notes do contain Ms. Kahle's self-report of rheumatoid arthritis. Tr. 1658.

*c.    Drug-seeking Behavior*

Lack of awareness of drug-seeking behavior can be a valid factor to consider in evaluating a doctor's opinion. *See Edlund*, 253 F.3d at 1157-58. But here, Dr. Shlifer was aware of the incidents that the ALJ cites as evidence of drug-seeking behavior. Tr. 80, 1660. Faced with the same evidence as the ALJ, Dr. Shlifer reached a different conclusion. This is not the situation in *Edlund*, where the treating physician lacked information essential to the validity of his opinion.

Furthermore, the Commissioner's briefing appears to concede that drug-seeking behavior was not a valid reason undermining Dr. Shlifer's opinion by not addressing Ms. Kahle's argument on this issue. Dkt. 12 at 6, Dkt. 13 at 11-13. The Court concludes that substantial evidence does not support drug-seeking behavior as a reason to undermine Dr. Shlifer's opinion.

*d.    Harmless Error*

The Court concludes that inconsistencies with clinical evidence constitute a specific and legitimate reason, supported by substantial evidence, for the ALJ to discount Dr. Shlifer's opinion. Although the ALJ provided additional reasons unsupported by substantial evidence, the error is harmless. *See Carmickle*, 533 F.3d at 1162-63.

2.    <u>Parul Sharma, D.O.</u>

The opinion of Ms. Kahle's treating rheumatologist, Dr. Sharma, includes limitations that Ms. Kahle could sit, stand, and walk less than one hour each per day and needed to shift positions at will, could not lift more than five pounds, and would need complete freedom to rest frequently throughout the day. Tr. 1138-40.

The ALJ discounted Dr. Sharma's opinion on the grounds that (1) his clinical findings were largely normal, except for joint tenderness, (2) his opinion was inconsistent with Ms.

Kahle's work history and daily activities, and (3) he did not take into account "the evidence of drug seeking activity." Tr. 41. The Court concludes that the lack of supporting clinical findings and the lack of awareness of possible drug-seeking behavior provide a specific, legitimate reason to discount Dr. Sharma's opinion.

### a. Clinical Findings

The ALJ discounted Dr. Sharma's opinion because "[n]either Dr. Sharma's opinion nor his treatment notes contain objective findings consistent with such severe restrictions…." Tr. 41, citing Tr. 1040-61, 1141-55. The record contains notes from five office visits.[9] In all five, the only abnormal musculoskeletal findings are tenderness, which is based on Ms. Kahle's self-report of pain when touched. Tr. 1037, 1050, 1633, 1629, 1625. All objective symptoms, such as synovitis, effusion, warmth, crepitation, and tendon laxity, were noted as absent and laboratory results were normal. *Id.* Because the ALJ reasonably discounted Ms. Kahle's self-reports, as discussed above at pages 3-11, all clinical findings not based on her self-report are normal, and thus substantial evidence supports the absence of clinical findings as a reason to discount Dr. Sharma's opinion.

### b. Work History

As discussed above, substantial evidence does not support the ALJ's finding that Ms. Kahle worked for many years with her current impairments. No evidence suggests that the impairments Dr. Sharma based his opinion on are impairments that Ms. Kahle had for years

---

[9] The Commissioner cites treatment notes from other providers, but the ALJ relied only on Dr. Sharma's own findings. The Commissioner's argument is therefore an improper post-hoc rationalization that this Court cannot rely on to affirm the ALJ. See *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

while she worked. This reason does not, therefore, support discounting Dr. Sharma's opinion. And the ALJ's finding that Ms. Kahle stopped working for reasons other than her impairment has no bearing on the reliability of Dr. Sharma's opinion. Dr. Sharma did not opine as to why Ms. Kahle stopped working. Substantial evidence does not support work history as a reason to discount Dr. Sharma's opinion.

### c. *Daily Activities*

As discussed above at pages 7-8, the only daily activity the ALJ relied on was Ms. Kahle's care of her mother, but since Ms. Kahle was unable to provide physical care for her mother and even her limited efforts cause her health to deteriorate and were ultimately unstainable, daily activities are not inconsistent with disability. Accordingly, substantial evidence does not support daily activities as a reason to discount Dr. Sharma's opinion.

### d. *Drug-seeking Behavior*

The ALJ discounted Dr. Sharma's testimony on the grounds that he apparently did not take into account evidence of Ms. Kahle's "drug seeking activity." Tr. 41. As discussed above at pages 9-11, the ALJ reasonably determined that drug-seeking behavior undermines Ms. Kahle's reports of pain because she could be exaggerating claims of physical pain in order to obtain more drugs. Lack of awareness of drug-seeking behavior can be a valid factor in evaluating a physician's opinion. *See Edlund*, 253 F.3d at 1157-58. The Court concludes that substantial evidence supports the ALJ's finding that lack of awareness of evidence of drug-seeking activity undermines Dr. Sharma's opinion.

### e. *Harmless Error*

Lack of supporting clinical evidence and lack of awareness of drug-seeking behavior provide a specific and legitimate reason, supported by substantial evidence, to discount Dr.

Sharma's opinion. Although the ALJ also provided reasons unsupported by substantial evidence, the error is harmless. *See Carmickle*, 533 F.3d at 1162-63.

    **C.**      **Reviewing Physician Norman Staley, M.D.**

Ms. Kahle argues that the ALJ improperly relied on the opinion of nonexamining physician Dr. Staley because Dr. Staley did not explain how he reached his conclusions. Dkt. 12 at 4. The weight given a nonexamining physician's opinion depends on the degree to which the physician provides supporting explanations. *Garrison*, 759 F.3d at 1012; 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. [The ALJ] will evaluate the degree to which these medical opinions consider all of the pertinent evidence in [the] claim, including medical opinions of treating and other examining sources."). However, "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews*, 53 F.3d at 1041 (emphasis in original) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)). Given that Dr. Shlifer's and Dr. Sharma's opinions were permissibly discounted, Dr. Staley's is the only remaining opinion in the record addressing the alleged impairments at issue.[10] Dr. Staley had before him records addressing Ms. Kahle's degenerative disc disease, esophagus issues, and polyarthralgia. *See* Tr. 114, 99.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving all other ambiguities. *Andrews*, 53 F.3d at 1039. This is what the ALJ

---

[10] Other doctors addressed mental issues, which are not challenged in this case.

did in giving more weight to Dr. Staley's opinion than Dr. Shlifer's and Dr. Sharma's opinions. The ALJ gave great weight to Dr. Staley's opinion because it was consistent with the largely normal functional clinical findings. Tr. 40. Dr. Staley cited Ms. Kahle's degenerative disc disease as the explanation for the limitations he did impose, such as standing, walking and sitting no more than six hours each per day and lifting no more than 10 pounds frequently. Tr. 117. As discussed extensively above, treating physicians Dr. Duggal, Dr. Shlifer, and Dr. Sharma all documented largely normal clinical findings of Ms. Kahle's functional abilities. Dr. Staley described the objective medical evidence as inconsistent with Ms. Kahle's allegations of incapacity. Tr. 116. His opinion does not lack explanation, and the ALJ did not err in relying on Dr. Staley's opinion. Substantial evidence supports the ALJ's conclusions as to Ms. Kahle's residual functional capacity and determination that she is not disabled.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 27th day of April, 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 19